— Stephens J.

By the Court.

delivering the opinion.
Error is assigned in this ease on the first four charges giv<en by the Judge.
[1.] The first charge gives correctly the abstract law as to what constitutes probate in solemn form, but we think it was error to give that charge in this case, because there were not facts which could, as we think, have authorized the jury to conclude that the probate which was attacked, had been made in solemn form. The widow, in this case, had butfive days notice of the time when the will would be propounded, and we do not think that was sufficient notice, under the circumstances. True, there is no time prescribed, so far as we are informed, but a reasonable time has always been required by the Courts. We do not think that five days was a reasonable notice to a woman who had been very recently thrown, perhaps for the first time in her life, upon her own. business talents, under circumstances of such affliction as would naturally draw her thoughts away from subjects of 'business. This was a very important matter to her, and five days was too short a period for one in her novel and distressed condition to make the necessary preparation of procuring skillful counsel, and looking up evidence. This view is greatly strengthened by analogy. In the Superior and Inferior Courts of this State, the party defendant is allowed twenty days within which to make up his pleadings, and ■then six months afterwards to prepare his evidence. Even in Justices’ Courts, whose jurisdiction is limited to very small and comparatively unimportant amounts, the defendant has Jen days for the preparation of his pleadings, and a month ¿íterwards to prepare his evidence. Here, a matter of great *514 consequence was in issue, and Mrs. Harwell was required to procure counsel, make up her pleadings, and hunt up and produce her evidence, all within the short space of five days. There is obviously some limit to the shortness of a valid notice — nobody will say a minute or an hour will do — and we are constrained to think that the time allowed in this case was unreasonably short. There was, therefore, no evidence to authorize the jury to consider that there had been a probate in solemn form, and that issue ought not to have been submitted to them.
The second charge was founded on the first, and of course • falls with it. There had been no probate in solemn form, and it was error to base a charge on the theory of such a probate.
[2.] The third charge is manifestly inconsistent with the fifth, which certainly presents the law for the executor as favorably as it exists. This third charge relates to the revocation of probate generally, probate in common form as well as probate in solemn form. Bearing this in mind, its inconsistency with the fifth charge is easily shown. Now, probate in common form does not bind the heir, nor does even probate in solemn form bind her, when the revocation is sought on the discovery of a later will which was not known at the time of the probate. And when she is not bound by the pro., bate, she may have it revoked for any cause which would have defeated it at first. This charge then is equivalent to an assertion that the probate of a will can not be defeated by showing that a later inconsistent will ‘was executed, unless , that later will be propounded for probate. Now, suppose the later will to have been revoked — if so, il cannot be propounded for probate, and yet, according to the proposition contained in the fifth charge, it may defeat the probate of the older will, according as the last was revoked with an intention to revive the first or not. That is to say, the third charge asserts that a later will can not defeat the probate of a prior one, unless the later is itself carried to probate; while *515 the fifth charge asserts that the later will, without being offered for probate, may or may not defeat the prior one. This third charge then is inconsistent with the fifth. But the material inquiry is, whether it is inconsistent with the law? We think it is; for we think the fifth charge gives the law quite as favorably to the executor as he was entitled to have it. There was no error assigned upon the fifth charge, and we shall not deliver any judgment on it; but as the question involved in it was thoroughly argued by both sides, I will state, for a future guide in discussing the point, what was the inclination of Judge Benning and myself (Judge Lump-kin being absent), and I will add that subsequent reflection and examination of authorities have strengthened my own impression. It has been a long mooted question whether the single fact of the revocation of a subsequent will, revives a ' prior revoked one. The argument in favor of the revival is this: The first will would be good but for the last which revokes it, and this last being itself afterwards revoked, becomes a nullity — has no effect whatever, and of course leaves the prior will unaffected. And it is analogized to the case of a statute revived by the repeal of another which had repealed the first. Such is the rule of the common law in the case of statutes, but the civil law is different, and so is the good reason of the thing different. Where a principle is sound, it ought to be carried to "all strictly analagous cases, unless stringent authority forbids; but if the principle be unsound, analogy ought not to be allowed to carry it to a single case beyond the imperative demands of authority — the cases in which it has been already planted by decisions. Then is it a sound logical principle that a statute is revived by killing the statute which had previously killed the first ? Is a dead man revived by killing his slayer ? Is not the result rather .this: whereas you had at first one dead man, now you have two ? 1 But this is itself but an analogy, and analogies are often fallacious from want of exact parallelism in the two-cases. Take, therefore, the] case before us. f Here are two *516 wills of different dates and inconsistent provisions, and the last one, in point of date, is confessedly revoked. Which, of these papers, or does either show the final testamentary mind of the testator ? I say neither does. The last one does not, as is admitted by everybody, for it is expressly revoked. How is it with the first ? That contains what was once his mind, but we know that he changed that mind when he made the last one. How do we know that he ever reverted to it ? It is said that he changed again when he revoked the last. This is true, but to what did he change ? The ease is this: he had a scheme and abandoned it for another, and then abandoned the second. All so far is clear and satisfactory, but can you go further and say that, when he abandoned the last, he returned to the first? If these two schemes comprehended all the possible dispositions of his propertyj then the conclusion would be a logical one, that when he aban doned the one he returned to the other. But when the number of possible schemes in every case is legion, you can not say that because he has departed from any one, you know his mind has settled upon any other particular one out of that infinite number. The whole fallacy lies in assuming that the two papers exhaust the subject. It seems to me that the abandonment of any one scheme does not of itself afford the least indication in favor of any other particular one out of an infinite number. Then it can not be said, as the third charge declares, that the probate of a will can not be defeated or revoked by proof of a later inconsistent will, unless the last one itself goes to probate. The question on the probate of. a will is, whether the paper propounded contains the final testamentary scheme of the testator ? If it dont, it is not his will, and any paper which shows that though the paper propounded was once his will, it had ceased to be so, would defeat the proposed probate, (without rebutting proof) whether such later paper were itself offered for probate or not.
[3.] The fourth charge is good, so far as it relates to the presumption of the destruction of a will by the testator him *517 self, arising from the fact that it was last known in his custody and can not now be found; but so far as it relates to the burden being cast on the person seeking to set up the missing will, we think it is erroneous for two reasons. It assumes that the caveatrix was attempting to set up the missing will, when' she was in fact claiming an intestacy. It was therefore inapplicable to the case. It was wrong, also, because it rests upon the third as its basis, and of course falls with it.
Judgment reversed.