## ANDREWS & Co. *vs.* KAUFMANS.

Where between the levying of an attachment by a creditor and the obtaining judgment thereon, the debtor made to another creditor notes of $100.00 each in lieu of a pre-existing debt, and the notes were sued in a justice court and placed in judgment, such judgments were prior in lien to a subsequent judgment on the attachment. The fact that the small notes were made, by agreement, for the purpose of defeating the attaching creditor and preferring the other, does not, without more, make a case of collusion and fraud, and, consequently, does not warrant such a hypothesis in the charge.

JACKSON, Judge, dissented.

Attachments. Lien. Judgments. Fraud. Before Judge CRAWFORD. Muscogee Superior Court. November Term, 1877.

To the report contained in the decision, it is only necessary to add, that the court charged, in substance, as follows: The issuing and levying of the attachment created a lien, and when judgment was obtained, the lien was good as against the debtor; the only question is, was it good as against the other creditors who held the small judgments against the debtor? If nothing else appeared except their existence and priority over the judgment in attachment, they would be entitled to the fund raised by the attachment. But it is claimed by the other side that, after the attachment lien had been created, the debt of Andrews & Co. was divided into small notes, within the jurisdiction of a magistrate's court, to secure the payment of the Andrews debt and defeat the legal effect of the attachment. The law allows a debtor to prefer one creditor to another, by payment,

transfer or sale; or by mortgaging unincumbered property to secure one creditor to the exclusion of another. But if the Kaufmans had a lien by attachment on this money, the debtor could not by relinquishment, positive order or mortgage, remove that lien so as to give Andrews the benefit of it. Nor could he accomplish the same result by agreeing to change his liability to a court of less jurisdiction where an earlier judgment than the attachment judgment could be obtained. If such were the facts, it would amount to collusion (which would be an ingenious legal device under the forms of law to defeat and destroy its own just operation), and a judgment so obtained, though good as between the parties making it, would be fraudulent as to third parties, and must be postponed to the attachment judgment. If, however, the facts were not so, and there was no collusion, then the prior judgments would not be fraudulent, and would take the fund.

BLANDFORD & GARRARD; W. A. LITTLE, for plaintiffs in error, cited Code, §§447, 1953, 3580, 3331, 3329; 1 *Kelly*, 192; 24 *Ga.*, 353; 18 *Ib.*, 668; 22 *Ib.*, 466; 23 *Ib.*, 616; Bump on Fr. Con., 217.

THORNTON & GRIMES, for defendants, cited on division of debt, 22 *Ga.*, 466; 23 *Ib.*, 616. On distinction made by lien of attachment, Code, §§3331, 1945. On fraud, Code, §§1947, 1952, 3596, 3290; 58 *Ga.*, 94.

WARNER, Chief Justice.

This case came before the court below on a rule against the sheriff to distribute money in his hands, there being conflicting claims to it, whereupon an issue was made up and tried, when the jury, under the charge of the court, found the issue in favor of J. & J. Kaufman. The case is brought here on a bill of exceptions to the charge of the court and refusal to charge as requested. It appears from the evidence in the record, that J. & J. Kaufman sued out an

attachment against Wesley, their non-resident debtor, which was executed by serving a summons of garnishment on Murdock, the agent of the Southern Mutual Insurance Company, on the 6th day of November, 1879, and judgment was obtained thereon on the 8th of March, 1877. It further appeared in evidence, that on the 8th of December, 1876, Wesley, who was indebted to J. C. Andrews & Co. that amount, executed and delivered to them nine promissory notes for $100.00 each, due one day after date, which notes were sued in a justice court and judgments rendered thereon on the 3d day of January, 1877. Executions were issued on the attachment judgment and on the justice court judgments, and placed in the sheriff's hands to claim the money collected from the garnishee by virtue of the attachment process. It also appears from the evidence in the record, that the sheriff collected the money from the garnishee on the Kaufmans' *fi. fa.* by the instructions of the attorney for Andrews & Co., who notified him to hold it up as he would claim it for them. The sheriff had no instructions from the attorneys of the Kaufmans to have the execution issued, or to collect the money.

The counsel for Andrews & Co., requested the court to charge the jury, that " if they believed from the evidence that J. & J. Kaufman sued out an attachment against Wesley and served the same by garnishment on Murdock, and after this, Wesley being indebted to J. C. Andrews & Co. in the sum of nine hundred dollars, gave his nine notes for $100.00 each, and Andrews & Co. obtained judgments at common law on said notes before the attachment judgment in favor of the Kaufmans, then the judgments in favor of Andrews & Co.constitute a prior lien against the fund in the sheriff's hands, if the transaction between Andrews & Co and Wesley was *bona fide* and he owed them the money." This request the court gave, with the addition of the following words, " and not made collusively to give Andrews & Co. a preference over the Kaufmans," and refused to give the request in charge without adding the additional words

as above stated, and this refusal to charge the request without adding the additional words, is the error complained of.

In this state a debtor may prefer one creditor to another, and to that end he may *bona fide* give a lien by mortgage or *other legal means.* Code, §1943. Debts in the aggregate which amount to more than justice court jurisdiction, may be divided into liquidated demands so as to bring them within such jurisdiction. Code, §447. As between attaching creditors only, does the first attachment levied create a prior lien (Code, §3330), but in a contest between attachments and ordinary judgments on suits, it is the judgment, and not the levy, which fixes the lien. Code, §3331. All money raised by process of garnishment shall be paid over to the creditors of the defendant according to the priorities now established by law. Code, §3545.

Should the court have given the charge as requested, without the additional words, " and not made collusively, to give Andrews & Co. a preference over the Kaufmans," in view of the evidence in the record and the law applicable thereto ? The charge of the court assumes that the preferring of Andrews & Co. by Wesley, the debtor, by giving to them the $100.00 notes so as to enable them to obtain judgments thereon in due course of law, and thus acquire a prior lien on the money in the garnishee's hands over the Kaufmans' attachment, was in law a collusive fraud, and would defeat the lien of Andrews & Co.'s older judgments upon the money in the hands of the garnishee. This is not an open question in this court. See *Lavender vs. Thomas,* 18 *Ga.,* 668 ; *Bank of Savannah vs. The Planters' Bank et al.* 22 *Ga.,* 466 ; *Alexander et al. vs. Young,* 23 *Ga.,* 616. If the debt due by Wesley to Andrews & Co. had not been a *bona fide* debt for which the small notes were given, but merely an assumed indebtedness, as was the case in *Raefle vs. Moore,* 58 *Ga.,* 94, it would have presented an entirely different question, but when a man does nothing more than the law allows him to do, it is difficult to perceive how it can be said with legal propriety, that he has been guilty of a *collusive fraud.*

It was suggested that the Kaufmans had acquired a lien on the money in the garnishee's hands by the levy of their attachment. The reply is that they obtained no lien upon the money as against a common law judgment creditor, whose judgment was of older date than their attachment judgment.

In view of the previous rulings of this court in the cases cited, we think the court erred in adding the words to the request to charge, " and not made collusively to give Andrews & Co. a preference over the Kaufmans," as set forth in the record.

Let the judgment of the court below be reversed.

BLECKLEY, Judge, concurred, but furnished no written opinion.

JACKSON, Judge, dissenting.

The law is undoubtedly that a debtor may ordinarily give a preference to one creditor over other creditors when he is in failing circumstances, provided he honestly owes such creditor. This he may do by sale, by mortgage, or by cutting up a large note into small ones, so that the preferred creditor may get the first judgment by suing in a court which can render judgment in a shorter time. 18 *Ga.*, 666 ; 22 *Ib.*, 466 ; 23 *Ib.*, 616 ; Code, §§447, 1953.

By examining these cases, it will be seen, however, that in none of them had the property of the debtor been attached and a lien created. In the contest between the banks in Savannah, in the case in 22d *Ga.*, 466, garnishments were sued out *at common law*, which did not give any lien to the creditor ; but no attachment *pendente lite* or otherwise was sued out, so as to fix the lien of the creditor upon the property attached by serving the garnishment. But in attachment cases, the attachment is levied by serving the summons of garnishment just as effectually as by seizing property in the hands of the debtor, Code, §3288 ; and of course the lien upon the property, debts, or effects in the hands of the garnishee is as effectual and valid as if in the debtor's own hands.

So that the question in this case, under the facts made in this record, is, can a debtor, after his goods are attached, and after a lien has been fixed by the attaching creditor, divest that lien from the property attached by any act or contrivance of his own with another creditor, and give the preference to that other creditor over the more vigilant attaching creditor? It would hardly be seriously contended that he could do so by sale of the property attached to the other creditor, or by mortgage thereon. Yet if there had been no lien by attachment and its levy, he could have done so by sale or mortgage. The lien, and the lien alone, prevents him from doing so. Yet it is just as lawful for him to prefer a creditor by sale or mortgage as by dividing a large claim into small notes; and the general rule that he may give the preference is equally lawful in the one case as in the other. So that the question comes to this: can the debtor collude with the creditor whom he wishes to prefer to do indirectly what he could not do directly? If he could not divest the lien by a square, open, manly sale or mortgage, can he do so by the indirect means of carving the big debt into small pieces, so as to give an *earlier judgment,* and thereby defeat the attachment lien?

The Code, §1952, declares as *null* and *void,* and *fraudulent in law against creditors,* "every conveyance of real or personal estate, by writing or otherwise, and every bond, suit, *judgment and execution,* or *contract* of *any description,* had or made with intention to delay or defraud creditors, and such intention known to the party taking; a *bona fide* transaction on a valuable consideration, and *without notice or grounds for reasonable suspicion,* shall be valid." It will be seen that a judgment is put upon the same footing as a conveyance, and whatever would set aside a conveyance would set aside a judgment; and the language is still stronger, it is any "contract, of any description, had or made with intention to delay or defraud creditors, and such intention known to the party taking." Here is a contract of a certain description made to cut up a large debt into

small notes, with intent to defeat this lien; and the party taking not only knew it, but contrived it with the debtor on purpose to defeat the lien of his more vigilant adversary. Here is a judgment had by means of this contract, the effect of which is, and the intent of which was, to oust this lien, and take the property attached from its operation and put it into the pocket of the contractor, who did it on purpose to oust the lien.

What sort of a transaction would stand to give the preference?   "A *bona fide* transaction on a valuable consideration," without more?   No.   The law says (Code, §1952) "a *bona fide* transaction on a valuable consideration, *and without notice* or *grounds for reasonable suspicion*," shall be valid.   Notice of what?   Why, of the lien, of course, and the intention to defeat it.   Grounds for reasonable suspicion of what?   Of the intention of the debtor to defeat this lien, of course.

So section 1953, in stating how a debtor may prefer a creditor, declares that "to that end he may *bona fide* give *a lien* by mortgage or other legal means," showing that to mortgage is a legal means, just as legal as to carve the large debt into small notes; but whoever dreamed that the debtor, by thus giving a lien, however legal the means, could divest *a prior lien?*

But it is argued that the attachment lien is not good as against a judgment had before the judgment in the attachment case, because, under the Code, section 3331, it is declared that "between attachments and ordinary judgments or suits, it is the judgment, and not the levy, which fixes the lien."   Yes, between ordinary suits and judgments, obtained regularly and without collusion, and attachments such is the rule ; but not, I apprehend, between judgments collusively obtained ahead of the attachment judgment by a contrivance, fixed up after the attachment, by the debtor and creditor, on purpose to defeat the lien which was fairly obtained.

The lien of this attachment was good over this large debt,

and it would have remained good but for this *new contract*, made after it had vested by the levy, to cut up the old debt into small notes so as to enable that creditor to procure his judgments ahead of the attachment judgment, and thus to give him the prior lien. He could not, it is conceded, do this by mortgage or other conveyance; why, then, should he be allowed to effect his purpose by this other contract of cutting up this debt, and thus giving an earlier judgment? What particular sanctity is there in this over the other contracts?

Suppose this had been an attachment for purchase money and levied on the property purchased, could the lien be defeated by this contrivance? I think not. If not, can it be defeated in this sort of attachment, where the lien is just as valid as in the case of purchase money?

Again, I understand that the facts in this record make the case of two attaching creditors, the hindmost of whom got ahead of his more active contestant by this contrivance, and defeated his prior lien. If so, of course the transaction is void and fraudulent as to the first attaching creditor, so far as it seeks to divest his lien.

Again, the principle ruled in 58 *Ga.*, 94, is that this sort of thing cannot stand if done collusively, and such was the charge of the court in this case. And the facts, I think, show that it was so done.

This court has never decided that a lien could be divested by this sort of trick—this underhand, indirect endeavor to do what cannot be done directly; and the cases in the 18th, 22d and 23d *Ga.*, can all stand consistently with the view here presented; but if they could not, I should hold that section 1952 of our Code was not before the court when those cases were decided, and that the Code had changed the law as then held. I see no trouble, however, in letting those cases stand and affirming this judgment.

My mind revolts at extending the principle ruled in 22 *Ga.*, 466, one inch beyond what it squarely covers. I agree with Judge Stephens, in *Lively vs. Harwell*, 29 *Ga.*, 515, where he says: " But if the principle be unsound, analogy

ought not to be allowed to carry it to a single case beyond the imperative demands of authority—the cases in which it has been already planted by decisions." The case in the 22d does not cover a case of lien by attachment. It was service—simple service of garnishment at common law, which gave no preference or lien to the suitor over other creditors. I think the principle, ruled and applied even to such a case as that, wrong, unsound, and I would not extend it; nor is it necessary, under the operation of the rule of *stare decisis*, to extend it to attachments and liens created by them. If it be so extended, a colluding creditor and debtor can defeat every attachment lien by a contract to cut up a big debt into small notes, to be sued on them in justice courts, and judgments to be there entered up. And this, I think, is in the teeth of the Code, §1952, which, in express words, places suits and judgments upon the same footing with other contracts or conveyances.

So I dissent from the judgment of reversal.