MAY & CO. *et al. vs.* SIBLEY, sheriff, *et al.*

1. In claim cases, the attorney causing the levy and prosecuting the rights of the plaintiff in *fi. fa.* is entitled to his fees from the proceeds of the property condemned, although older liens may demand and recover the proceeds from the immediate client of such attorney.

(*a.*) Where a woman, as trustee for her children, filed a claim to property levied on, but subsequently withdrew such claim and, in her own right, claimed the proceeds arising from the sale of the property by virtue of a superior lien to that of the plaintiff in *fi. fa.,* she will be compelled to pay the attorney's fees of her adversary for bringing the fund into court before she can have it paid to her.

(*b.*) If the case be prosecuted until the claimant withdraws his claim, and thereupon a fund is raised and brought into court, the attorney is as much entitled to fees as if the property had been condemned by verdict.

(*c.*) It does not matter that the attorney contracted with his client for conditional fees only. The fees allowed for bringing money into court are not dependent on contract, but spring out of the law, and are such reasonable fees as the court will allow.

2. Can a debtor, by agreement with one creditor, divide the claim held by the latter into small notes within the jurisdiction of a justice's court, and thus expedite judgments thereon, and give them priority over the holder of a larger claim, who has already attached the debtor's property? *Quære.*

(*a.*) The decision of a majority of the court in 60 *Ga.,* 669, reviewed, and the question left open.

(*b.*) If this was done by fraudulent collusion, it would certainly be illegal.

December 19, 1882.

Attorney and Client. Claim. Fees. Debtor and Cred-

itor.   Fraud.   Before Judge SNEAD.   Richmond Superior Court.   April Adjourned Term, 1882.

In 1878 and 1879 four attachments were levied upon a house and lot in Augusta, as the property of Jno. M. Turner, and a claim was interposed by his wife as trustee for her two daughters, under a voluntary deed made by Turner in February, 1876.   The claim case was returned to the superior court, and as the debts upon which the attachments were based antedated the voluntary deed, and Jno. M. Turner was insolvent at the time of its execution, the claim was withdrawn, and judgments were entered up on the attachments in August and October, 1880.   In October, 1879, pending the levy of the attachments, Jno. M. Turner made to his wife nineteen promissory notes of $100 each, based upon an alleged indebtedness of his to her, and for the purpose of defeating the attachments by getting prior judgments in a justice's court.   These notes were reduced to judgment, November 4, 1879.   The house and lot were sold by the sheriff under the attachments to Mrs. Turner for $1,325. In January, 1881, the sheriff was ruled in the county court by the plaintiffs in attachment, and answered that he had applied the money to the elder justice court *fi. fas.*, which had been placed in his hands previous to the sale. Judgment was rendered in favor of the attachment creditors, and the case was taken by appeal to the superior court, where it came on for trial at the October adjourned term, 1881.

Two issues were involved in the trial:   (1.) Whether the attorney of the attaching creditor was entitled to fees from the proceeds of the property:   (2.) Whether the *fi. fas.* of Mrs. Turner were *bona fide* liens on the property. It is unnecessary to set out the evidence further than to state that the attorney for the plaintiffs in attachment was employed on a conditional fee of one-third of the recovery.   On this subject the court charged as follows:

" In claim cases the attorney causing the levy and prose-
cuting the rights of the plaintiffs in *fi. fa.* shall be entitled
to his fees from the proceeds of the property condemned,
although older liens may demand and recover the pro-
ceeds from the .immediate client of such attorney," and
then qualified the principle as follows: " But if the
attorney of Mrs. Turner gave notice to the attorney of the
movants that he had obtained the justice court judgments,
and that they would claim the fund, and the attorney of
the movants went on and had the property sold, he can-
not be allowed his fees out of the fund in court."

The jury found in favor of the respondents in the rule;
plaintiffs moved for a new trial, which was refused, and
they excepted.

F. W. CAPERS; M. CUMMING, for plaintiff in error.

H. D. D. TWIGGS, for defendants.

JACKSON, Chief Justice.

1. This record presents two questions: First, was the
plaintiff in error entitled to fees for bringing the money
into court? We think he was, because he fought the
claim off until it was withdrawn, and then the property
was sold, and the money brought into court and made
the subject matter of this rule. By the statute, Code,
§1998, when, by litigation with a claimant, money is thus
brought in, no matter what lien takes. it, the party bring-
ing it into court by such litigation is entitled to fees.

It does not matter that the plaintiff, who is entitled to
the fund by superior lien, has an interest allied to claim-
ant's, and was really helping the claimant in the fight,
and did not desire the property sold; if he pursues the
fund thus brought into court for distribution, he can get
that only after paying his adversary for bringing it in by
successful litigation. . In this case the plaintiff in execu-

tion, who was held entitled to the fund, is a party in her own right, entitled to the money in her own individual right and as her own property; while, though the same individual is the defeated claimant, she is such claimant as trustee for her children. A claim is as successfully defeated when the claimant withdraws it, and abandons the field, as when a verdict is rendered. The fruit is the same. The property is sold and the fund in court.

Nor does it matter that the other plaintiff, who claims fees, contracted with his client for conditional fees only. The fees allowed for bringing money into court are not dependent on contract, but spring out of the law, and are such reasonable fees as the court will allow.

2. Inasmuch as the ruling antagonistic to these views necessitates the grant of a new trial, it is unnecessary to determine the other point.

A majority of this court held that a large claim might be cut into little notes and thus expedite judgments and give them priority over a creditor who had actually seized the debtor's property by attachment, and thus the favored creditor and debtor might collusively defeat the vigilant attaching creditor. I held the contrary opinion, and still adhere to it, for the reasons given in my dissenting opinion in that case. 60 *Ga.*, 669.

My associate, then on the circuit bench, Judge Crawford, held and holds the same view, having rendered the judgment which was there reversed.

But as that was the decision of a then majority of the bench, we are unwilling to overrule it except by a unanimous bench.

Judge Speer, while expressing no opinion on the merits of the question, prefers, as he has not examined it as fully as would be desirable, and cannot well do so during his short term of service, that the point lie over for future decision by a full bench. It will therefore take that direction.

It may be remarked, however, that where fraud may be

discovered lurking about the transaction, and circumstances show fraudulent collusion between husband and wife to defeat the active creditor by an illegal or unfounded claim, no court, it is presumed, would uphold such a transaction. This court has certainly never done so.

Judgment reversed.